IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY APANOVITCH | ) | CASE NO. 1:91CV2221 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | |
| MARC C. HOUK , WARDEN, | ) | MEMORANDUM OF OPINION AND ORDER |
| | ) | |
| Respondent. | ) | |

On December 14, 1984, Petitioner Anthony Apanovitch ("Petitioner" or"Apanovitch") was convicted of the aggravated murder, aggravated burglary, and two counts of rape of Mary Anne Flynn and was subsequently sentenced to death and 45-47 years of imprisonment. He filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Ohio on November 1, 1991. On July, 28, 1993, the district court dismissed the Petition. Subsequently, on December 28, 1993, Petitioner's and the Respondent Marc C. Houk's ("Respondent"or "State") Motions to Alter Judgment were denied. Petitioner filed his appeal from the district court's decision on January 26, 1994. The Sixth Circuit Court of Appeals, on October 19, 2006, remanded the action for further adjudication as to Petitioner's claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and the Respondent's DNA request. This

matter is now before the Court pursuant to the Sixth Circuit's remand instructions as well as Petitioner's Motion Suggesting Procedures to Follow on Remand (ECF 83) and the Respondent's Motion for DNA Testing. (ECF 84).

In order to succeed on his *Brady* claims, the Petitioner must show that (1) evidence favorable to the petitioner (2) was suppressed by the State and (3) that he suffered prejudice as a result. *Strickler v. Green*, 527 U.S. 263, 281-82 (1999). The Sixth Circuit found that the Petitioner satisfied the first two criteria with respect to the following three issues: (1) a document relating to a police report on statements made by Petitioner; (2) coroner notes concerning an unidentified hair on the victim's body; and (3) documents reflecting that the police knew that the victim was a blood type A secretor. Since the Sixth Circuit held that the district court abused its discretion in refusing to grant Petitioner's third motion to expand the record regarding these claims, the materials in question are now part of the record. On remand, this Court is required to determine the third factor, i.e., whether the Petitioner suffered prejudice as a result of the State's withholding this evidence.

Failure to disclose evidence is material and therefore prejudicial if there is a reasonable probability that had the material been submitted to the defense, the result of the proceeding would have been different. *Id.* at 280, 282. A reasonable probability of a different outcome occurs where the state's suppression of evidence undermines confidence in the outcome of the trial. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The Court in *Kyles* stated: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* A petitioner need not show that introduction of favorable evidence would have

rendered the overall evidence insufficient to convict. *Id.* at 434-35. Materiality is determined by considering the nondisclosed evidence collectively, not individually. *Apanovitch v. Houk*, 466 F.3d 460, 475 (6th Cir. 2006). The combined impact of all of the suppressed evidence must be considered against the totality of the circumstances. *See Kyles*, 514 U.S. at 441. In *Brown v. Head*, 272 F.3d 1308, 1316 (11th Cir. 2001), the Eleventh Circuit held:

> The prejudice component of an ineffective assistance claim and the materiality component of a *Brady* claim both require the same thing: the petitioner must establish that but for the deficient representation or suppression, there is a reasonable probability of a different result in the proceeding. *Compare Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068 with *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995). If the failure to use certain evidence does not result in prejudice for ineffective assistance purposes, the suppression of some of that same evidence will not be material for *Brady* purposes.

*See Joseph v. Coyle*, 469 F.3d 441, 462-63 (6th Cir. 2006), *cert. denied*, ___ S.Ct. ___, 2007 WL 120276 (U.S. Mar. 19, 2007) ("prejudice" under *Brady* and *Strickland* is similar).

The Sixth Circuit reversed the district court's denial of the State's motion to compare the DNA results to the Petitioner's DNA and remanded for that purpose. *Apanovitch*, 466 F.3d at 489-90. However, it opined that questions exist as to this evidence. The Petitioner argues that allowing the comparison between DNA found on the victim and Petitioner's DNA would require the Court to make new factual findings based on evidence and testimony not introduced at trial that is prohibited by the Constitution. Also, he contends that the Sixth Amendment requires a state jury to make factual findings concerning new evidence that enhances a sentence and makes him eligible for the death penalty. The Respondent asserts that the DNA test results are relevant to the *Brady* claims and could potentially dispose of the entire remand.

In *Lockhart v. Fretwell,* 506 U.S. 364 (1993), the United States Supreme Court determined that the prejudice prong of the *Strickland* test need not be viewed as of the time of trial. *Id.* at 372.

A habeas court analysis must not only focus on the mere outcome of the trial to determine if prejudice occurred, but also on whether the result of the proceeding was fundamentally unfair or unreliable. *Id.* at 369-70. In *Lockhart*, the defendant's attorney failed to make an objection under then-existing Eighth Circuit precedent at defendant's capital sentencing hearing. The defendant was sentenced to death, and then filed a habeas petition in which he claimed ineffective assistance of counsel. By the time the defendant filed his habeas petition, however, the Eighth Circuit had overturned the case on which the objection would have relied. The Supreme Court held that the defendant could not show that he was prejudiced by his counsel's failure to object, because the precedent was no longer good law, and his counsel's error did not deprive the defendant of a right to which he was entitled. *Id.* at 369-71. Thus, the Court found that the prejudice prong of *Strickland* (and *Brady*), unlike the performance prong, could be evaluated at a time other than the trial.

Following *Lockhart*, a question arose as to whether the *Strickland* prejudice test was altered. In *Williams v. Taylor*, 529 U.S. 362, 393 (2000), the Court held that the prejudice standard in *Strickland* still applies to those cases in which the ineffective assistance of counsel deprives the defendant of a substantive or procedural right to which the law entitles him.

*Minnik v. Anderson*, 151 F. Supp.2d 1015 (N.D. Ind. 2000), is helpful. In *Minnik*, the petitioner, convicted of rape and murder and sentenced to death, asserted that his *Brady* rights had been violated because the prosecution withheld evidence that a second semen sample, from a type O non-secretor, was found on the carpet where the murder occurred but was not disclosed to the defense at trial. The first disclosed semen sample was from a type O secretor. The evidence at trial showed that the petitioner and the victim's husband were both type O secretors. Thus,

Minnik contended that the second sample from the non-secretor was exculpatory. After the trial, the prosecutor had blood and saliva samples taken from the husband and Minnik sent for further testing without Minnik's knowledge or consent. The second test showed that Minnik was actually a non-secretor, thereby rendering the second semen sample non-exculpatory. *Id.* at 1024. Minnik asserted that on habeas review that the court should examine the new information about his secretor status as it would have been viewed at the time of trial. Had the serologist testified that the only stains in question were from a secretor but that he was a non-secretor, he would not have been convicted. *Id.* at 1033.

The district court ruled that the evidence should not be considered from the time period of the trial before Minnik's non-secretor status was known. The court, following *Lockhart*, reasoned that viewing the evidence in the time frame of the trial would result in a windfall to Minnik to which the law does not entitle him if the court were to look at his secretor status only as it was thought to be at trial. *Id.* at 1035.

In the present case, the Court finds that the DNA test results - if a match resulted between DNA found on the victim and Apanovitch's DNA - would show that even if *Brady* violations occurred, under the totality of the circumstances he has not shown that his trial was fundamentally unfair. The DNA test results would have the effect of making the *Brady* claims factually false resulting in a windfall to which Apanovitch is not entitled. Of course, if the DNA does not show a match, the *Brady* claims will have to be considered.

The Petitioner requests that the Court permit him to conduct discovery, allow him to expand the record, and then conduct an evidentiary hearing. In view of the fact that the Sixth Circuit has ordered a DNA comparison and the Court's ruling that the DNA results are related to

the *Brady* claims, the Court finds that discovery, expansion of the record, and an evidentiary hearing at this time are inappropriate.

The Petitioner also requests that if the Court denies part or all if his suggestions, it certify this matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court finds that an immediate appeal would not advance the ultimate termination of the litigation. Since the Sixth Circuit has ordered that a DNA comparison be made, an appeal at this time would be futile.

Accordingly, the Petitioner's Motion Suggesting Procedures to Follow on Remand (ECF 83) is denied. The Respondent's Motion for DNA Testing is granted. (ECF 84).

It is further ordered that:

(1) Within thirty (30) days of this Order, Apanovitch will submit to a DNA sample collection, which will consist of two swabs of the inside of his mouth by a qualified phlebotomist at the Ohio State Penitentiary (Respondent will be responsible for ensuring that the Penitentiary makes available the qualified medical personnel and equipment for the purposes of sample collection);

(2) Apanovitch will answer the questions specified in the Identification Document (Attached) and sign the form attesting to the truth of his answers;

(3) The phlebotomist who takes the samples will fill out his/her portion of the Identification Document;

(4) In the presence of counsel for both parties, the phlebotomist will dry the samples and place them in a paper container and seal it;

(5) A representative of the United States Marshal's Office will attend the sample collection to witness the procedure, take custody of the sealed sample, place the sample in an

overnight express envelope (to be provided by the Ohio Attorney General's Office), seal it, deliver it to UPS for shipment to Forensic Science Associates ("FSA"), and complete their own Chain of Custody document;

(6) FSA will complete its Chain of Custody portion of the Identification Documents, thus ensuring that the seals remained intact. FSA will then obtain an STR profile from Apanovitch's sample and compare the result to the Unknown Male #1 previously identified by FSA; and

(7) FSA will generate a report, which Respondent will file with the Court.

IT IS SO ORDERED.

Dated: May 9, 2007

/s/ John R. Adams
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

**IDENTIFICATION DOCUMENT**

Test Subject:

Name: Last ____________________ First ____________________ Middle Initial _______

Date of Birth: _________________________ Social Security #: _________________________

History: Have you ever had:
A bone marrow transplant? Yes ________ No ___ If so, when? ____________
A blood transfusion in the last 90 days? Yes ______ No _____

Name of Legal Representative or Agency: ____________________________________________

Phone Number of Legal Representative or Agency: ( ) ____________________________

For use at the time the sample is taken:

Type of Sample: ______________________ Date of Collection: ________________________

Name of Person collecting Sample: ______________________________________________

Facility: _____________________________________________________________________

City: _________________________ State: _____________ Zip Code: ________________

Phone: ( ) ____________________________________________________________

Witness: ______________________________________________________________________

I VERIFY THAT THE ABOVE IDENTIFICATION INFORMATION IS TRUE AND CORRECT.

____________________________________ ________________________________________

Signature of Test Subject
(or guardian if under 18)

Date

**CHAIN OF CUSTODY**

To be completed by person taking the sample:

I HEREBY CERTIFY THAT I HAVE TAKEN THE SAMPLE(S) FROM THE PERSON LISTED ON THIS DOCUMENT AND PACKAGED THE SAMPLE(S) FOR SHIPMENT TO FORENSIC SCIENCE ASSOCIATES.

Signature ____________________ Date ______ Time ______ Initials __________

To be completed at the Forensic Science Associates Laboratory

Box Taped Yes _________ No _________ Tape Initials ___________

Tape Intact Yes __________ No _________

Comments: ____________________________________________________________

______________________________________________________________________

_______________________________________________________________________

I HEREBY CERTIFY THAT I HAVE RECEIED THESE SPECIMANS AT THE FORENSIC SCIENCE ASSOCIATES LABORATORY IN THE ABOVE STATED CONDITION.

Signature _______________________________ Date ________________

Forensic Science Associates Case No # ___________________________

Agency Case # _____________________________________________